United States District Court
Southern District of Texas

**ENTERED**

June 23, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Benilde Campos Bernal, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil No. 4:26-cv-2239 |
| | § | |
| Martin Frink, *et al.*, | § | |
| | § | |
| Respondents. | § | |

**<u>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

Petitioner Benilde Campos Bernal is a native and citizen of Cuba who concedes that

she unlawfully entered the United States in September 2022. Docs. 1 ¶ 1, 7-1. On February

3, 2026, she was detained by the Department of Homeland Security pursuant to 8 U.S.C.

§ 1225(b), and she remains in the custody of Respondent, Warden of the Houston Contract

Detention Facility. Docs. 1 at 1, 8 at 1. Petitioner now seeks a writ of *habeas corpus* under

28 U.S.C. § 2241 on the grounds that her present detention without a bond hearing violates

(1) the Immigration and Nationality Act; (2) substantive due process; (3) procedural due

process; (4) equal protection; (5) the Administrative Procedures Act; (6) the Suspension

Clause; and (7) the *Accardi* Doctrine.

Now before the Court is Respondent's Motion for Summary Judgment. Doc. 8. For

the reasons set forth below, Respondent's Motion is GRANTED, and the petition for writ

of *habeas corpus* is DENIED.

The Court addresses each of Petitioner's challenges to her detention in turn.

### A. Immigration and Naturalization Act

Petitioner first argues that her detention pursuant to 8 U.S.C. § 1225(b)(2)(A) violates the plain language of the Immigration and Naturalization Act ("INA") and its implementing regulations. Doc. 1 ¶¶ 74–85. The Fifth Circuit has issued a controlling decision foreclosing this statutory argument in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), which held that anyone present in the United States without legal admission is "seeking admission" into the country and thus subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).[1] Petitioner concedes that she is unlawfully present in the United States. *See* Doc. 1 ¶ 1. She is therefore an "applicant for admission" to the country, and Section 1225(b)(2)(A) statutorily mandates her detention.

### B. Due Process

Petitioner next argues that her pre-removal-order detention without an individualized assessment violates the Fifth Amendment's Due Process Clause. Many alien petitioners have framed this as a procedural due process claim, others as a substantive violation. Most allege both.

---

[1] Petitioner further contends that *Buenrostro-Mendez v. Bondi* is inconsistent with *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), in that the Fifth Circuit failed to exercise its independent judgment when reviewing the INA and associated DHS actions. *See* Doc. 1 ¶¶ 67–73. As Petitioner evidently acknowledges by merely raising this argument "[t]o further preserve the statutory issue for potential *en banc* review by the Fifth Circuit or certiorari to the Supreme Court," this Court is bound by controlling Fifth Circuit precedent and therefore does not entertain grounds for that precedent to be overturned.

This is an unhelpful distinction. The Fifth Amendment's Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." Traditionally, "[a] substantive due process violation is an action government officials may not take no matter what procedural protections accompany them." *SO Apts., L.L.C. v. City of San Antonio*, 109 F.4th 343, 352 (5th Cir. 2024) (internal quotations and citations omitted). In other words, the Court has recognized that some rights—those "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty"—are so substantive that no amount of "due process" can justify their deprivation. *See Washington v. Glucksberg*, 521 U.S. 702, 720-721 (1997).

In contrast, "[p]rocedural due process imposes constraints on governmental *decisions* which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (emphasis added). The government must "adhere[] to the minimum procedures required by t[he] [Due Process] Clause" before abridging these protected interests. *Goss v. Lopez*, 419 U.S. 565, 574 (1975). Thus, procedural due process does not prevent the deprivation of life, liberty, or property itself. Instead, by enabling persons to contest the basis upon which the government has proposed to deprive them of a protected interest, procedural due process rules minimize the risk of "mistaken or unjustified deprivation." *Carey v. Piphus*, 435 U.S. 247, 259–60 (1978).

Alien detention challenges, however, have proven not so easily separated. In 1976, *Mathews v. Eldridge* articulated the three distinct factors that guide procedural due process

analysis.[2] *See* 424 U.S. 319. Since then, the Supreme Court has thrice addressed whether the Fifth Amendment's Due Process Clause permits the detention of deportable aliens pending their removal. *See Reno v. Flores*, 507 U.S. 292 (1993); *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Demore v. Hyung Joon Kim*, 538 U.S. 510 (2003). None of these opinions cite *Mathews*, let alone applies its three factors. *See generally Reno*, 507 U.S. 292; *Zadvydas*, 533 U.S. 678; *Demore*, 538 U.S. 510.

These conspicuous omissions compel a conclusion. Aliens are indeed persons entitled to due process. *See Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). But when aliens challenge pre-deportation detention, the protections afforded by the traditional procedural due process framework prove an imperfect fit. The rationale is straightforward: the admission of aliens implicates a distinct sovereign interest grounded in the Founders' understanding that "the right of remaining in our country is vested in no alien; he enters and remains by the courtesy of the sovereign power, and that courtesy may at pleasure be withdrawn." *Diaz v. Garland*, 53 F.4th 1189, 1216 (9th Cir. 2022) (Bumatay, J., concurring) (quoting The Address of the Minority in the Virginia Legislature to the People of that State; containing a Vindication of the Constitutionality of the Alien and Sedition

---

[2] The three distinct factors are (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 at 335. If *Mathews* applied to pre-deportation detention, the Supreme Court would have reviewed removal proceedings' sufficiency in light of these three countervailing factors. But as noted in-text, the Court has not done so.

4

Laws 9-10 (1799)). Because "the admission and exclusion of foreign nationals is a fundamental sovereign attribute," it is "largely immune from judicial control." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018). Therefore, when a detained alien challenges the United States' exercise of that attribute, *Mathews* does not control the analysis. *See Diaz*, 53 F.4th at 1214 (Bumatay, J., concurring) ("In resolving similar immigration-detention challenges, the Supreme Court has not relied on the *Mathews* framework.") (citing *Demore*, 538 U.S. at 521–31 and *Reno*, 507 U.S. at 299–315).

Instead, to the extent the INA implicates a cognizable liberty interest held by Petitioner, "the categorical abrogation of that liberty interest by a validly enacted statute suffices to provide all the process that is 'due.'" *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (Scalia, J., concurring). Congress has decided that *all* aliens shall be mandatorily detained pending their deportation proceedings, irrespective of their individualized flight risk or danger to the community. *See* 8 U.S.C. § 1225(b)(2)(A); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Thus, unless Petitioner can show that the "*substantive rule of law is defective*"—that her asserted liberty interest is so fundamental as to render its deprivation patently unconstitutional—the INA affords her all the process that she is due. *Conn. Dep't*, 538 U.S. at 7. A request for process beyond what has been statutorily provided is merely a substantive due process argument "recast in procedural due process terms." *Reno*, 507 U.S at 308 (internal quotations omitted).

The Court therefore turns to Petitioner's substantive due process claim. It, too, turns on an immigration-specific subset of due process jurisprudence. *Washington v. Glucksberg*

was decided twenty-one years after *Mathews v. Eldridge*, but neither of the two alien detention cases decided thereafter cited *Glucksberg* to frame the asserted liberty interest. *See Zadvydas*, 533 U.S. 678; *Demore*, 538 U.S. 510. Instead, both the *Zadvydas* Court and the *Demore* Court adopted their predecessors' practice of framing the Fifth Amendment's limitations on alien detention without distinguishing between procedural and substantive protections. *See Carlson v. Landon*, 342 U.S. 524 (1952); *Reno*, 507 U.S. 292; *Zadvydas*, 533 U.S. 678; *Demore*, 538 U.S. 510. Among these seminal decisions,[3] only the *Zadvydas* Court found the challenged detention unconstitutional, and its holding was limited to recognizing a constitutional limit to indefinite *post*-removal-order detention. *See* 533 U.S. at 682. And rather than identifying a fundamental substantive right, all four "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523.

First, in *Carlson v. Landon*, the Court examined the Immigration and Naturalization Service's process of detaining alien members of the Communist Party pending their deportability determinations. *See* 342 U.S. at 526–29. Explaining that "detention is necessarily a part of [the] deportation procedure," the *Carlson* Court "rejected the aliens'

---

[3] The *Zadvydas* Court's invocation of the constitutional avoidance canon to read in a limitation to post-removal-order detention was later extended to *all* detained aliens referenced by 8 U.S.C. § 1231(a)(6), regardless of whether those aliens had or had not been previously admitted to the country. *See Clark v. Suarez Martinez*, 543 U.S. 371, 375 (2005). Because the *Clark* Court simply extended the *Zadvydas* interpretation of the statute, it refrained from substantively examining the alien petitioners' due process rights as the four opinions addressed in-text did. *See generally id.*

6

claims that they were entitled to be released . . . if they did not pose a flight risk." *Demore*, 538 U.S. at 524 (citing *Carlson*, 342 U.S. at 538). At least one of the petitioners was deemed "not likely to engage in any subversive activities" himself. *Carlson*, 342 U.S. at 549 (Black, J., dissenting). But the *Carlson* Court held that the Fifth Amendment did not mandate an individualized finding of dangerousness as to each petitioner before detaining them; instead, the Court deferred "to the legislative scheme." *See Demore*, 538 U.S. at 525 (citing *Carlson*, 342 U.S. at 541).

In *Reno v. Flores*, the Immigration and Naturalization Service maintained a policy to only release detained alien juveniles to parents, legal guardians, or other adult relatives. 507 U.S. at 297–98. A class of juveniles without a qualifying guardian or relative challenged their continued detention as violative of due process. *Id.* at 299–300. The *Flores* Court again upheld the INS policy, noting that "reasonable presumptions and generic rules . . . are not necessarily impermissible exercises of . . . power . . . with respect to aliens." *Demore*, 538 U.S. at 526 (citing *Flores*, 507 U.S. at 313).

In *Demore v. Hyung Joon Kim*, the Court went even further. 538 U.S. 510. There, the petitioners raised a due process challenge to 8 U.S.C. § 1226(c), which mandates pre-removal-order detention for a limited class of deportable aliens, including those convicted of an aggravated felony. *Id.* at 516. Noting Congressional findings that "one out of four criminal aliens released on bond abscond[] prior to the completion of his removal proceedings" and that "the INS could not even identify most deportable aliens, much less locate . . . and remove them," the *Demore* Court held that the detention of criminal aliens

pending their removal proceedings is "a constitutionally permissible part of th[e] [removal] process." *Id. at* 518, 531.

Zadvydas v. Davis is the lone outlier. There, aliens challenged their continued detention *after* the issuance of a final order of removal. The *Zadvydas* Court held that post-removal-order detention becomes unconstitutional when removal is "no longer practically attainable." 533 U.S. at 690. Thus, after a removal order is issued, it is presumptively reasonable for the government to continue to detain an alien for six months, but thereafter, detention violates due process if there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. However, even the *Zadvydas* Court acknowledged the legitimacy of pre-removal-order detention, distinguishing that "post-removal period detention, *unlike detention pending a determination of removability* . . ., has no obvious termination point." *See Demore*, 538 U.S. at 529 (citing *Zadvydas*, 533 U.S. at 697) (emphasis in original).

It is against this backdrop that the Court must answer the question as to whether pre-removal-order detention of an alien without an individualized bond hearing pursuant to 8 U.S.C. § 1225(b)(2)(A) violates the Fifth Amendment's Due Process Clause. Some district courts have answered in the affirmative, holding "that the Due Process Clause requires an individualized assessment of flight risk and danger when detention becomes unreasonable in relation to the statute's purpose of facilitating lawful removal." *See Banegas Avile v. Frink*, No. CV H-26-916, 2026 WL 976144, at *3 (S.D. Tex. Apr. 10, 2026) (Rosenthal, J.) (collecting cases). Others have disagreed and flatly held that due process does not

mandate a "bond hearing at odds with the terms of § 1225(b)(2)(A)." *See Clavijo v. Thompson*, No. 4:26-CV-01454, 2026 WL 923310, at *4 (S.D. Tex. Mar. 26, 2026) (Eskridge, J.) (citing *Diaz Patino v. Villegas*, 822 F. Supp. 3d 718, 721 (N.D. Tex. 2026)); *Salazar- Gonzalez v. Noem*, 4:25-cv-04662 (S.D. Tex., Feb. 12, 2026) (Hanen, J.); *Jimenez v. Bradford*, 4:25-cv-05853 (S.D. Tex., Feb. 10, 2026) (Lake, J.).

This Court joins the latter group. Collectively, *Carlson*, *Reno*, *Zadvydas*, and *Demore* stand for a common principle: It is not membership in the Communist Party, juvenile status, or criminal history that subjects aliens to "rules that could be unacceptable if applied to citizens," *Matthews v. Diza*, 426 U.S. 67, 79–80, rather, it is their alien status. As such, the Court's due process jurisprudence establishes a brightline rule: an alien unlawfully present in the country awaiting a removal order—a defined termination point— can be detained as "a constitutionally permissible part of th[e] [removal] process." *See Demore*, 538 U.S. at 531 (citing *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid")); *Zadvydas*, 533 U.S. at 697 (distinguishing post-removal-period detention from pre-removal period detention).

Here, it is undisputed that Petitioner has been detained pending the issuance of a final removal order. *See* Doc. 8 at 1. Her pre-removal-order detention does not violate the

Fifth Amendment's Due Process Clause.[4] Pursuant to *Zadvydas*, due process would limit the duration of Petitioner's detention *after* a removal order has been issued. *See Zadvydas*, 533 U.S. at 697. But until then, Petitioner's detention remains a constitutionally permissible part of her removal from the country.

### C. Equal Protection

Petitioner next challenges her detention on equal protection grounds. This claim likewise lacks merit.

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State . . . shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court has held that the Due Process Clause of the Fifth Amendment "reverse incorporates" this guarantee of equal protection, thereby binding the federal government to the same constitutional limitations. *Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954). Accordingly, "Fifth Amendment equal protection claims against federal actors are analyzed under the same standards as Fourteenth Amendment equal protection claims against state actors." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)).

---

[4] To the extent Petitioner argues that her present detention constitutes "arbitrary and capricious" government action violative of the Due Process Clause, *see* Doc. 1 ¶ 64, this theory fails on identical grounds as her primary substantive due process challenge: it still depends on the deprivation of a constitutionally protected interest. Moreover, Petitioner's allegation of selective enforcement is belied by the fact that she is among the tens of thousands of aliens that the Department of Homeland Security has mandatorily detained under 8 U.S.C. § 1225(b)(2)(A).

For both state and federal claims, the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Said differently, the "clause's protection reaches only dissimilar treatment among similar people." *Mahone v. Addicks Utility Dist.*, 836 F.2d 921, 932 (5th Cir. 1988). Accordingly, at the outset, a court must determine whether members of a subject classification are indeed "in all relevant respects alike" to persons or groups allegedly subjected to differential treatment. *See Tex. Entm't Ass'n v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Petitioner's equal protection claim fails this threshold inquiry. 8 U.S.C. § 1225(b)(2)(A) indeed subjects aliens seeking admission to the United States to mandatory detention, whereas certain aliens in removal proceedings under 8 U.S.C. § 1226 are entitled to individualized bond hearings. The distinction between these respective classifications, however, is non-trivial. Aliens mandatorily detained under 8 U.S.C. § 1225(b)(2)(A) have committed a criminal offense by unlawfully crossing American borders and have not yet been admitted to the United States. *See* 8 U.S.C. §§ 1325, 1326; *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 500 (5th Cir. 2026). In contrast, those aliens entitled to a bond hearing under 8 U.S.C. § 1226 have merely committed a *civil* infraction—such as overstaying a visa—and were at one point lawfully admitted into the United States. *See, e.g.*, 8 U.S.C. § 1227(a)(1)(C)(i).

11

As such, Petitioner has not shown that Respondent is treating "similarly situated" people differently. *See Cleburne*, 473 U.S. at 439. Quite to the contrary, Respondent subjects two distinct categories of deportable aliens to correspondingly distinct removal procedures. This alone renders Petitioner's equal protection challenge meritless.

However, even if the Court were inclined to subject 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention provision to judicial scrutiny, the statute would survive rational basis review. "[A] classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012). In other words, where neither a fundamental right nor a suspect classification is implicated, differential treatment survives judicial review if there is "any reasonably conceivable state of facts that could provide a rational basis" for the disparate treatment. *See Cabral v. Holder*, 632 F.3d 886, 894 (5th Cir 2011). And "[u]ndocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'" *Plyler v. Doe*, 457 U.S. 202, 223 (1982).

Respondent's refusal to grant aliens who were never lawfully admitted to the United States (a subset of a decidedly non-suspect class) an individualized pre-detention bond hearing (a non-fundamental right) triggers mere rational basis review. *See Carnesolta v. Tate*, No. 4:26-cv-1006, 2026 WL 948727, *3 (S.D. Tex. Apr. 8, 2026) (Eskridge, J.). And the Court finds that a rational explanation exists as to why Congress would subject aliens

detained under 8 U.S.C. § 1225(b)(2)(A) and § 1226 differently. As civil offenders previously admitted to the country, the latter group may well deserve pre-detention processes that not-yet-admitted aliens do not. Said differently, a conceivable government interest—subjecting aliens who unlawfully entered, and are still seeking admission to, the country to more exacting detention policies—exists for the statutes' disparate standards. Seeing as the Supreme Court has stressed "the limited scope of judicial inquiry into immigration legislation," *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), this Court declines to delve further. Petitioner's mandatory detention therefore survives rational basis review.

In sum, Petitioner has neither identified a similarly situated class of persons subject to disparate treatment nor established that the relevant Immigration and Naturalization Act provisions fail rational basis review. Therefore, Petitioner has not been denied equal protection of the law.

### D. Administrative Procedure Act

Petitioner's Administrative Procedure Act ("APA") claim also fails, as the APA is not the proper claim to challenge her detention. The APA subjects agency action to judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. However, 28 U.S.C. § 2241 provides district courts with jurisdiction over petitions for habeas relief where a petitioner is "in custody in violation of the Constitution or law or treaties of the United States." *Immigration and Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 305 (citing 28 U.S.C. § 2241(c)(3)). Accordingly, when detainees challenge "the invalidity of their

13

confinement . . . their claims must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025).

Petitioner challenges her continued custody. *See* Doc. 1. She has thus rightly filed a habeas petition to seek judicial relief from her detention—an adequate remedy in court. *See id.* Therefore, "habeas corpus, not the APA, is the proper vehicle" for Petitioner's claim. *See Trump*, 604 U.S. at 674 (Kavanaugh, J., concurring).

### E. Suspension Clause

Petitioner next claims that her detention violates the Suspension Clause. It does not.

The Court begins with the Constitution's text: "The Privilege of the Writ of *Habeas Corpus* shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9. The clause specifies the two scenarios in which the writ can be suspended, but it also generally enshrines the Founders' understanding of the writ as a privilege "guarantee[ing] freedom from discretionary detention." *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 149 (2020) (Thomas, J., concurring). That freedom is not only abridged by executive decree. *See, e.g.*, Habeas Corpus Act of 1863, ch. 81, 12 Stat. 755. Rather, if "a statute grant[s] the executive the power to detain without bail or trial based on mere suspicion of a crime or dangerousness," the writ is *de facto* suspended for those detained. *See Thuraissigiam*, 591 U.S. at 149 (Thomas, J., concurring); *see also Boumediene v. Bush*, 553 U.S. 723, 771 (2008) (noting that judicial abstention from reviewing writs of *habeas corpus* may be a *de facto* suspension of the privilege of the writ).

14

Here, Section 1225(b)(2)(A) of the Immigration and Naturalization Act does not suspend the writ because it does not grant the executive unfettered discretion. Instead, it requires that the examining immigration officer determine that the alien "is not clearly and beyond a doubt entitled to be admitted" to the country. 8 U.S.C. § 1225(b)(2)(A). Only then is the alien temporarily detained pending a removal proceeding, at which the alien may adduce evidence refuting her removability. Thus, as with Section 1225(b)(1)(A)(i), Section 1225(b)(2)(A) does not authorize detention based on mere suspicion, and it "bears little resemblance to a suspension as that term was understood at the founding." *See Thuraissigiam* 591 U.S. at 149 (Thomas, J., concurring). And whereas aliens subjected to expedited removal under Section 1225(b)(1)(A)(i) can only seek judicial review of three distinct determinations, aliens detained under section 1225(b)(2)(A) are free to petition for habeas relief on *any* grounds. *See* 8 U.S.C. § 1225(e)(2).

Accordingly, several district courts have flatly rejected these "Suspension Clause habeas petitions" as self-contradictory. *See, e.g.*, *Carnesolta v. Tate*, No. 4:26-cv-01006, 2026 WL 948727, *4 (S.D. Tex. Apr. 8, 2026); *Chi v. Warden, Bluebonnet Detention Facility*, No. 1:26-CV-067-H, 2026 WL 1062625, *3 (N.D. Tex. Apr. 13, 2026); *Delgado-Paz v. Olson*, No. 2:26-cv-00193-JRO-MJD, 2026 WL 1122637, *8–*9 (S.D. Ind. Apr. 24, 2026). Put simply, how can the writ be suspended if thousands of similarly situated aliens are filing habeas petitions to challenge their detention?

In light of the Founders' understanding of the Suspension Clause, the Court adopts this approach. Section 1225(b)(2)(A) does not authorize the executive branch to wield

unfettered discretion when mandating pre-removal-order detention. Instead, it prescribes determination by an appropriate officer, and any detention resulting from that determination is subject to habeas review. As such, Section 1225(b)(2)(A) cannot violate the Suspension Clause.

### F. *Accardi* Doctrine

Finally, Petitioner's *Accardi* Doctrine claim fails because the writ of *habeas corpus* affords relief from unlawful detention, not from unlawful arrests. Thus, even if the Department of Homeland Security violated its rules and procedures when arresting Petitioner, the petition would not justify Petitioner's release from custody.

The *Accardi* Doctrine requires agencies to follow their own rules and procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). 8 C.F.R. § 287.8(c) establishes the DHS's procedures for alien arrests. The regulation provides, in pertinent part, that "[a]n arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested . . . is an alien illegally in the United States," and "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(i–ii).

Here, Petitioner alleges that her arrest violated 8 C.F.R. § 287.8(c). Doc. 1 ¶¶ 138–148. She contends that because her ongoing detention flows directly from—and is

16

predicated upon—the arrest, the Court must remedy the violation by ordering her release. *Id.*

The Supreme Court has affirmed that "an illegal arrest has no bearing on a subsequent deportation proceeding" because the "body or identity of [the arrestee] is never itself suppressible as a fruit of an unlawful arrest." *Immigration and Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1039–40 (1984). It logically follows that if an alien is detained pursuant to a deportation proceeding, a habeas petition cannot secure the alien's release from custody by challenging the lawfulness of the underlying arrest. Therefore, the Court joins several courts in this and neighboring federal districts in holding that "an illegal *arrest* has no bearing on the legality of detention *following* that arrest." *See Carnesolta v. Tate*, No. 4:26-CV-01006, 2026 WL 948727, at *4 (S.D. Tex. Apr. 8, 2026) (Eskridge, J.); *see also Hechavarria-Vasquez v. Tate*, No. CV H-26-1266, 2026 WL 1427003, at *2 (S.D. Tex. May 21, 2026) (Lake, J.); *Navdeep v. Warden Ero El Paso Camp E. Montana Det. Ctr.*, No. EP-26-CV-829-KC, 2026 WL 1179624, at *2 (W.D. Tex. Apr. 23, 2026) (Cardone, J.).

Thus, even if Petitioner's arrest violated 8 C.F.R. § 287.8(c), the Court cannot remedy the violation by ordering her release. Consequently, her *Accardi* Doctrine claim must be dismissed.

\* \* \*

For the foregoing reasons, the motion for summary judgment is GRANTED, and the petition for writ of *habeas corpus* is DENIED. This action is DISMISSED WITH PREJUDICE. A final judgment will be entered separately.

**SO ORDERED.**

**SIGNED** at Houston, Texas, on the 23rd of June, 2026.

_____

Nicholas J. Ganjei
United States District Judge